IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LADONNA EVELYN TAYLOR,            )
on behalf of D.R.G., a minor,    )
                                 )
              Plaintiff,          )
                                 )
v.                               )   Case No. CIV-21-285-JAR
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
              Defendant.          )

## OPINION AND ORDER

Plaintiff Ladonna Evelyn Taylor ("Plaintiff"), on behalf of the minor child, D.R.G. ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

### Social Security Law and Standard of Review

Disability for persons under the age of 18 is defined by the Social Security Act as the "a medically determinable physical or

mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 416.906.   Social Security regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.   *See*, 20 C.F.R. § 416.924.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).   This Court's review is limited to two inquiries:   first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.   Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).   The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.   It means such relevant

---

[1]  At step one, a child will not be deemed disabled if he is working and such work constitutes substantial gainful activity.  The regulations require the claimant to establish that he is not engaged in substantial gainful activity.  At step two, a child will not be found disabled if he does not suffer from a medically determinable impairment that is severe. At step three, a child's impairment must meet a listing and must meet the duration requirement of 12 months.  20 C.F.R. § 416.924(b), (c) and (d).

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 15 years old when the ALJ issued his decision. Claimant is alleged to have become disabled as of January 1, 2020 due to attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, depression, and anxiety.

## Procedural History

On September 27, 2018, Claimant, through Plaintiff, protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381 et seq.). Claimant's application for benefits was denied in its entirety

3

initially and on reconsideration.  On February 4, 2021, Plaintiff and Claimant appeared at an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic.  The hearing was conducted by Administrative Law Judge Doug Gabbard, II (the "ALJ").  The ALJ issued an unfavorable decision on March 10, 2021.  On April 15, 2021, the Appeals Council denied a review of the ALJ's findings.  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation.  He determined that Claimant's condition did not meet a listing and he had not been under a disability during the relevant period.

## Review

Plaintiff asserts the ALJ committed error in (1) failing to properly assess the medical source opinions; (2) failing to properly assess the consistency of Claimant's and Plaintiff's testimony with the evidence of record; and (3) assessing the six functional domains such that the assessment was not supported by substantial evidence.

4

**The Step Three Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of ADHD and borderline intellectual functioning. (Tr. 23). The ALJ also determined Claimant did not meet a listing or the equivalency of a listing, singly or in combination of her impairments. Id. The ALJ analyzed the six domains of functioning in light of Claimant's severe impairments. He concluded Claimant had a marked limitation in the area of acquiring and using information, less than a marked limitation in attending and completing tasks, interacting and relating to others, and caring for himself. The ALJ found no limitation in the functional areas of moving about and manipulating objects and health and physical well-being. (Tr. 24-31).

Plaintiff first contends the ALJ improperly evaluated the opinion of Tina Gibson, MSHR, LPC, a licensed therapist who treated Claimant. Ms. Gibson completed an assessment form on Claimant on March 30, 2020. She reported that Claimant and his siblings were placed with Plaintiff and her husband, their aunt and paternal uncle, after the children were physically and verbally abused by their parents and were homeless. Claimant had some adjustment issues with moving in with his aunt and her family. Plaintiff

5

reported Claimant struggled with confiding in others and often isolates from others. (Tr. 386).

In the area of Social/Interpersonal, Ms. Gibson found Plaintiff described a moderate disruption in Claimant's ability to interact with others, noting problem areas with peers/friends, social interaction, withdrawal, and making and keeping friends. She noted under "self-care/basic needs" that Claimant had a problem with hygiene. (Tr. 387). She also found Claimant attended school at Puterbaugh Intermediate in McAlester, Oklahoma under an IEP for ADHD. Under "functional role performance", Ms. Gibson cited to Plaintiff statements that Claimant had difficulties with his responsibilities at school and home. Plaintiff also reported Claimant had been diagnosed with ADHD and was taking medication for the condition. (Tr. 389). Plaintiff stated that Claimant suffered from depression, anger, anxiety, and a change in appetite and sleep patterns. Ms. Gibson noted Claimant was alert but had stuttered speech. She noted problem areas in concentration, learning disabilities, and impulse control. (Tr. 390). Ms. Gibson also concluded Claimant had "below average" intellectual development. (Tr. 391). She diagnosed Claimant with Adjustment Disorder with mixed anxiety and depressed mood. (Tr. 392). She

6

recommended both individual and family therapy. (Tr. 393).

On May 19, 2020, Ms. Gibson completed a Child's Mental Impairment Medical Source Statement on Claimant. She noted Claimant suffers from poor memory, sleep disturbance, mood disturbance, intrusive recollections of a traumatic experience, difficulty thinking or concentrating, and generalized persistent anxiety. In her narrative statement, Ms. Gibson stated that "Client struggles with anxiety and depression due to post traumatic emotional and physical abuse by biological father." "Client received an assessment including CAR included in this document." She recommended treatment as "weekly individual CBT therapy and as needed family therapy." (Tr. 362-63). Under her "prognosis", Ms. Gibson stated that "Client has the ability to process events and develop coping strategies to manage." (Tr. 364).

She noted Claimant had a low I.Q. or reduced intellectual functioning, writing "Client struggles with ADHD like symptoms and intellectual delays." Despite this limitation, Ms. Gibson stated that she anticipated Claimant's impairments or treatments would only cause him to be absent from school less than once a month. Id.

After evaluating Claimant's abilities under the functional

7

domains, Ms. Gibson found Claimant had a "marked" limitation in acquiring and using information and/or communicating with others; "marked" limitation in attending and completing tasks/maintaining concentration, persistence, and pace; "marked" limitation in interacting and relating with others; "no limitation" in moving about and manipulating objects; "less than marked" limitation in caring for himself; and "less than marked" limitation in health and physical well-being. (Tr. 364-65). In identifying any other limitations, Ms. Gibson stated that "Client describes worried thoughts and fears that contribute to sleep disturbances and impacts daily function." (Tr. 365).

In evaluating Ms. Gibson's opinion, the ALJ concluded that he was "generally not persuaded." He determined that her opinion was not supported by the treatment records from Massey Counseling which indicated Claimant's social development was "about average." The ALJ also found Ms. Gibson's opinion was "generally inconsistent" with the longitudinal record which indicated that Claimant responded to medication and presented as appropriate, friendly, talkative, and negative for hyperactivity, with good focus and concentration and normal mood and affect. He also found the opinion to be inconsistent with Claimant's teacher who related

that Claimant had no trouble getting along with others in school, was attentive and respectful, and tries extremely hard to maintain A's and B's.  (Tr. 28).

Most of Ms. Gibson's conclusions are based upon the statements to her by either Claimant or Plaintiff, which are in direct conflict with other evidence in the record.  Namely, Claimant's and Plaintiff's testimony at the administrative hearing indicate that (1) Claimant got along with his classmates in school and with his teachers (Tr. 46, 52); (2) Claimant's ADHD medication works to alleviate the symptoms of his condition (Tr. 53); (3) Claimant's medication to assist him in sleeping (Tr. 53); (4) Claimant has successfully adopted coping skills to help him control his anxiety or anger (Tr. 55); and (5) counseling has helped Claimant better control his emotions (Tr. 48).

Because Plaintiff filed Claimant's application for benefits after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, he must "articulate" in his decision "how persuasive

9

[he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. Id. However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same,

10

[he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ provided the required supportability and consistency analysis pertaining to Ms. Gibson's opinion. (Tr. 28). His finding that the opinion is not consistent with the record is supported by substantial evidence. No error is attributed to the ALJ's assessment of Ms. Gibson's opinion.

Plaintiff next challenges the ALJ's evaluation of Dr. Todd Graybill's opinion. Dr. Graybill's evaluation is dated January 11, 2017 – almost three years before Claimant's alleged onset date. (Tr. 442-43). Moreover, the report stemming from his evaluation consists of one page and is only a partial report with the remaining pages omitted. (Tr. 443). From the portion of the report that does exist in the record, it is clear that Dr. Graybill administered the WISC-IV testing. In so doing, he determined Claimant had a Full Scale IQ of 78, which placed him in the borderline range of intellectual functioning. Other than a breakdown of the individual index scores comprising the test, no subtest scores are included. Id.

The ALJ only found Dr. Graybill's opinion "generally

persua[sive]".  (Tr. 28).  He recognized the report was authored outside of the relevant time period and found it consistent with the objective evidence "in a very broad sense."  While this Court is not entirely certain the meaning intended with this last statement, the fact the opinion exists well outside of the relevant period renders it of only minimal use.  Most of the information set forth in the one page report consists of Dr. Graybill's observation of Claimant's attitude during his visit.  This is hardly opinion evidence subject to the supportability and consistency analysis.  Further, the use of the raw data derived from the report – such that it exists – by other experts in the record does not offend the regulations governing the evaluation of opinion evidence.  This Court finds no error in the consideration of Dr. Graybill's report.

Plaintiff also contends the reviewing state agency psychologists, Dr. Joan Holloway and Dr. Ryan Jones, were somehow deficient.  Plaintiff's explanation of her objections to these physicians' reports are patently lacking substance.  The recitation of the support for these psychological professionals' opinions is accurate in the record.  (Tr. 28).  As stated, any reliance upon Dr. Graybill's data and observations is not

prohibited.  No error is found in the evaluation of these reports.

## Consistency of Plaintiff's and Claimant's Testimony

Plaintiff contends the ALJ failed to properly evaluate the consistency of the testimony by Plaintiff and Claimant with the evidence of record.  At the time of the filing of the application in this case, Soc. Sec. R. 16-3p had superseded Soc. Sec. R. 96-7p.  Yet, the factors to be considered in assessing the consistency of a claimant's testimony remain (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 16-3p, 2017 WL 5080304.

13

The ALJ relied upon appropriate factors in evaluating the consistency of Plaintiff's and Claimant's testimony at the hearing. As stated, Plaintiff's and Claimant's testimony supported many the finding by the ALJ that many of Claimant's symptoms were alleviated by medication or non-existent.  The ALJ engaged in the proper two-step process in evaluating the consistency of Plaintiff's and Claimant's testimony required by Soc. Sec. R. 16-3p.  (Tr. 25). This Court finds no error in the evaluation.

### Consideration of the Domain Areas

Plaintiff challenges the findings of the ALJ in the six functional domain areas such that the ALJ should have found Claimant met or equaled a listing.  In order to have a marked impairment in the Acquiring and Using Information domain, the regulations state that the agency will consider how well a child acquires or learns information and how well he uses the information she has learned.  20 C.F.R. § 416.926a(g).

While Plaintiff makes several generalized arguments concerning the alleged flaws in the ALJ's analysis, she does not specifically challenge the ultimate finding of a marked limitation in this domain.  No further discussion in this area is required.

This Court also can find no error in the ALJ's assessment of

14

the domain of Attending and Completing tasks.  The regulations require an analysis of how well a child focuses and maintains his attention and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them.  20 C.F.R. § 416.926a(h). Claimant met several academic standards, relying upon the Claimant's aunt and teacher.  (Tr. 30, 295-303).

The domain of Interacting and Relating to Others requires consideration of how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(i).  The ALJ relied upon Plaintiff's and Claimant's testimony, as this Court previously relayed. (Tr. 30).  No error is found in the consideration of this domain and the ALJ's conclusions are supported by substantial evidence.

The domain of moving about and manipulating objects considers how a child moves his body from one place to another and how he moves and manipulates things, encompassing their fine and gross motor skills.  20 C.F.R. § 416.926a(j).  The ALJ's findings of no limitation in this domain was supported by Plaintiff's and Claimant's testimony concerning his playing of sports and other

activities. (Tr. 30). Substantial evidence supported his conclusions.

The next domain known as Caring for Yourself requires an evaluation of how well a child maintains a healthy emotional and physical state, including how well he satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). Plaintiff's and Claimant's testimony supported a finding of less than marked limitation in this domain. (Tr. 30-31). The conclusion is supported.

Plaintiff did not specifically challenge the evaluation of the final domain of health and physical well-being.

Many of Plaintiff's arguments require this Court to reweigh the evidence - a standard not available on review. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Consequently, this Court finds no error in the ALJ's analysis of the six domains.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

16

IT IS SO ORDERED this 27th day of March, 2023.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE